# United States Court of Appeals
## For the First Circuit

_____

Nos. 16-1424
    16-1435
    16-1474
    16-1482

PENOBSCOT NATION; UNITED STATES, on its own behalf,
and for the benefit of the Penobscot Nation,

Plaintiffs-Appellants/Cross-Appellees,

v.

AARON M. FREY, Attorney General for the State of Maine; JUDY A. CAMUSO,
Commissioner for the Maine Department of Inland Fisheries and Wildlife;
JOEL T. WILKINSON, Colonel for the Maine Warden Service; STATE OF MAINE;
TOWN OF HOWLAND; TRUE TEXTILES, INC.; GUILFORD-SANGERVILLE SANITARY
DISTRICT; CITY OF BREWER; TOWN OF MILLINOCKET;
KRUGER ENERGY (USA) INC.; VEAZIE SEWER DISTRICT; TOWN OF
MATTAWAMKEAG; COVANTA MAINE LLC; LINCOLN SANITARY DISTRICT; TOWN
OF EAST MILLINOCKET; TOWN OF LINCOLN; VERSO PAPER CORPORATION,

Defendants-Appellees/Cross-Appellants,

EXPERA OLD TOWN; TOWN OF BUCKSPORT;
LINCOLN PAPER AND TISSUE LLC; GREAT NORTHERN PAPER COMPANY LLC,

Defendants-Appellees,

_____

TOWN OF ORONO,

Defendant.

_____

Before
Howard, Chief Judge,
Torruella, Selya, Lynch, Thompson, Kayatta* and Barron, Circuit Judges.

_____

* Judge Kayatta is recused from this case and did not participate in the determination of
this matter.

**ORDER OF COURT**
Entered: April 8, 2020

A majority of the active judges who are not disqualified have voted to hear this case en banc. Accordingly, Penobscot Nation's petition for rehearing en banc and the United States' petition for rehearing en banc are each granted. In accordance with customary practice, the panel opinion and the dissent released on June 30, 2017 are withdrawn, and the judgment entered the same date is vacated. See 1st Cir. I.O.P. X(D).

The en banc court will have copies of the parties' previously filed briefs. The parties are also directed to file supplemental briefs addressing the following questions, in addition to any other questions the parties may wish to address.

1. Does the Indian Canon of Construction apply to the Maine Settlement Acts, the Maine Implementing Act ("MIA"), Me. Rev. Stat. Ann. tit. 30 ("30 M.R.S.A."), §§ 6201-6214, and/or the Maine Indian Claims Settlement Act ("MICSA"), 25 U.S.C. §§ 1721-1735? Also address the effects of 25 U.S.C. § 1725(h) and 25 U.S.C. § 1735(b).

2. Does the canon against conveying navigable waters affect the application of the Indian Canon, assuming the Indian Canon otherwise would apply? See Idaho v. Coeur d'Alene, 521 U.S. 261, 284 (1997) (holding that, because "navigable waters uniquely implicate sovereign interests," there exists a "strong presumption of state ownership" of these waters). If the canon against conveying navigable waters generally takes precedence over the Indian Canon, does the navigational waters canon apply here, given the fact that Congress ratified the Tribe's grant of the public right of way in the 1818 treaty?

3. How does the holding in Alaska Pacific Fisheries v. United States, 248 U.S. 78 (1918) (applying the Indian Canon in determining whether surrounding waters were within the "body of lands" comprising a reservation), impact this case, if at all? How does this Court's ruling in Maine v. Johnson, 498 F.3d 37 (1st Cir. 2007), impact this case, if at all?

4. Are there any material ambiguities in the relevant provisions of any of the Settlement Acts, for purposes of applying the Indian Canon of Construction? Please specifically address whether and how the word "solely" in 30 M.R.S.A. § 6203(8) is ambiguous and, if so, how it should be construed; whether the word "Reservation" in 30 M.R.S.A. § 6207(4) must be construed to have the same meaning as the word "Reservation" in 30 M.R.S.A. § 6203(8), and if not why not; and how, 30 M.R.S.A. § 6203, which provides that its subsections' definitions, including "Penobscot Indian Reservation," will apply "unless the context indicates otherwise," affect how we interpret the relevant statutes and construe any ambiguities.

5.      Because the MIA's definition of the Reservation references boundaries related to the 1796 and 1818 treaties between the Nation and Massachusetts and because Indian lands in Maine are subject to Maine law, do state common law and interpretive rules apply and therefore govern the meaning of the Settlement Acts?

6.      May the Court consider legislative history?  If so, what legislative history is relevant to the proper interpretation of the Settlement Acts and how does the relevant legislative history inform our interpretation of the statutes and any material ambiguities?

7.      Does 25 U.S.C. § 1723(a)(2) bar the United States from asserting to this Court the claims it previously articulated to the panel?

8.      Do the doctrines of laches, acquiescence, and/or impossibility, as argued by the State of Maine, bar the Nation's claims?  See City of Sherrill v. Oneida Indian Nation of N.Y., 544 U.S. 197, 217-21 (2005).

9.      Did the Penobscot Nation transfer the Main Stem of the Penobscot River to Maine under the Settlement Acts?

10.     What are the proper boundaries of the Reservation? What is the effect of Maine's former position that "portions of the Penobscot River and submerged lands surrounding the islands in the river are part of the Penobscot Reservation"?

11.      Is the Penobscot Nation's claim ripe that the Settlement Acts accord it the right to take fish for individual sustenance in the entire Main Stem section of the Penobscot River? See Reddy v. Foster, 845 F.3d 493, 501 (1st Cir. 2017) (describing the two prongs of the ripeness analysis, fitness and hardship); Town of Barnstable v. O'Connor, 786 F.3d 130, 143 (1st Cir. 2015) (discussing the fitness prong of the ripeness analysis).

12.     Does the Nation have standing to bring this claim? Specifically, does a declaration by a state's Attorney General confining a tribe's regulatory authority to dry land, despite statutory sustenance fishing rights, constitute state action amounting to a cognizable injury? Mashantucket Pequot Tribe v. Town of Ledyard, 722 F.3d 457, 463 (2d Cir. 2013) ("Although Article III's standing requirement is not satisfied by mere assertions of trespass to tribal sovereignty, actual infringements on a tribe's sovereignty constitute a concrete injury sufficient to confer standing. . . .  This rule exists because tribes, like states, are afforded 'special solicitude in our standing analysis.'" (quoting Massachusetts v. EPA, 549 U.S. 497, 520 (2007))).  Would a finding limiting the Reservation to the uplands constitute a viable threat to self-government? And is there evidence that Maine's actions have created or will create events that are neither "uncertain" nor "contingent," O'Connor, 786 F.3d at 143, and that there is a "harm . . . from our 'withholding of a decision' at this time," Reddy, 845 F.3d at 501 (quoting Labor Relations Div. of Constr. Indus. of Mass., Inc. v.

<u>Healey</u>, 844 F.3d 318, 330 (lst Cir. 2016)), including in regards to whether Maine's actions constitute a questioning of the tribe's sovereignty? <u>See</u> <u>Moe</u> v. <u>Confederated Salish & Kootenai Tribes of Flathead Reservation</u>, 425 U.S. 463, 468 n.7 (1976).

The supplemental briefs should be filed simultaneously on, or before, June 8, 2020, and shall comply with applicable rules concerning format, service, and other requirements. Any reply supplemental briefs must be filed no later than 21 days after the principal supplemental briefs are filed. Seventeen paper copies of all briefs filed should be provided to the Clerk's Office no later than one business day after the electronic brief is filed. Amici are welcome to submit amicus briefs addressing the aforementioned questions.

By the Court:
Maria R. Hamilton, Clerk

cc:
Hon. George Z. Singal
Christa Berry, Clerk, United States District Court for the District of Maine
Mary Gabrielle Sprague
Steven Miskinis
Bella Sewall Wolitz
James T. Kilbreth III
Kaighn Smith Jr.
Elizabeth Ann Peterson
Pratik A. Shah
David M. Kallin
Adrianne Elizabeth Fouts
Michael L. Buescher
Susan P. Herman
Christopher C. Taub
Paul Stern
Kimberly Leehaug Patwardhan
Matthew D. Manahan
Catherine R. Connors
Lindsay Scott Gould
Graydon Stevens
Daniel D. Lewerenz
Joel West Williams
Gregory A. Smith
Elliott A. Milhollin
Kaitlyn E. Klass
Gerald Donohue Reid